Christian De Olivas
CalBarNo. 249608
De Olivas Law Firm, APLC
200 N Bradford Ave, Ste L
Placentia, CA 92870
Telephone: (714) 646-3314
Facsimile: (714) 646-3721
Email: christian@deolivaslaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**(HONORABLE JUDGE BARRY TED MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | **CASE**: 308-CR-00439-BTM-1 |
| vs. | **DATE**: 04/21/08 |
| IRMA TIJERINA-DE LEYVA, Defendant | **TIME**: |
| | **NOTICE OF MOTION; MOTION TO SUPPRESS** |

## MOTION

The Defendant, IRMA TIJERINA-DE LEYVA, by and through his counsel, CHRISTIAN DE OLIVAS, and pursuant to the Fourth Amendment to the United States Constitution, hereby moves this Court to grant the above-stated motion.

**DATED**: April 21, 2008 **SIGNED**: s/ *Christian De Olivas*

CHRISTIAN DE OLIVAS

ATTORNEY FOR DEFENDANT
IRMA TIJERINA-DE LEYVA

## TOPICAL INDEX

TABLE OF AUTHORITIES........................................................................................ i

STATEMENT OF THE CASE ................................................................................... ii

MOTION TO SUPPRESS .......................................................................................2-6

CERTIFICATION OF SERVICE ........................................................................... 7

## TABLE OF AUTHORITIES

Katz v. United States, 389 U.S. 347 (1967) .......... 1
Carrol v. United States, 267 U.S. 132 (1925) .......... 1
United States v. Dunn, 946 F.2d 615 (9th Cir. 1991) .......... 1
United States v. Ross, 465 U.S. 798 (1982) .......... 1
United States v. Patterson, 492 F.2d 995 (9th Cir. 1974) .......... 1
United States v. Linn, 880 F.2d 209 (9th Cir. 1989) .......... 1
United States v. Martinez-Fuerte, 428 U.S. 543 (1976) .......... 2
Schneckloth v. Bustamonte, 412 U.S. 218 (9th Cir. 1988) .......... 2
United States v. Castillo, 866 F.2d 1071 (9th Cir. 1988) .......... 2
United Stated v. Preciado-Robles, 964 F.2d 882 (9th Cir. 1992) .......... 3, 4
Mapp v. Ohio, 367 U.S. 643 (1961) .......... 5
Wong Sun v. U.S., 371 U.S. 471 (1963) .......... 5

## STATEMENT OF CASE

On December 13, 2007, at approximately 6:00 PM, IRMA TIJERINA-DE LEYVA was stopped at the Highway 86 Checkpoint near Westmorland, California. The police officer on duty asked her to provide her citizenship documentation. She complied. The officer asked her where she was going. She responded saying that she was heading to a casino. The officer then asked her to search her trunk. She consented and the officer proceeded to inspect her trunk. After inspecting her trunk, and without giving a reason, the officer directed Ms. Tijerina to the secondary inspection area. She again complied.

At the secondary inspection area she was approached by another officer who once again asked for permission to search her vehicle and further, to allow him to perform a canine sniff of the vehicle. Feeling that she had no other choice, Ms. Tijerina again consented. She was then instructed to step out of the vehicle. Again she was completely cooperative and again she was not given a reason for the extensive search.

Instead of inspecting the car, the officer proceeded directly to perform a canine sniff. Ms. Tijerina did not see the dog react in any way. When the canine sniff was done, the officer began searching the outside of her car. He asked her if she had any work done to her car to which she replied in the negative. The officer then placed himself under her car and began banging on the underside of her car. Ms. Tijerina was still not informed as to why she was being subjected to a secondary inspection let alone why she was still being held or why the officer was forcible banging on her car.

Ms. Tijerina was instructed away from her vehicle and held for more than three hours without explanation. During this time, the officers dismantled major portions of her car. At around 12:00 AM, almost six hours after Ms. Tijerina was first stopped she was finally told the reason she had been held for such a long time, she was arrested for possession of cocaine with intent to distribute and jailed.

# I.

# ALL THE EVIDENCE SEIZED PURSUANT TO THE DISMANTLING OF THE DEFENDANT'S CAR MUST BE SUPPRESSED BECAUSE IT WAS SEARCHED IN VIOLATION OF HER FOURTH AMENDMENT RIGHTS.

## A. There Was No Probable Cause to Search Inside the Panels of the Car Without a Warrant.

Warrantless searches are "…per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Law enforcement officers may conduct a warrantless search of an automobile if there is probable cause to believe the vehicle contains evidence of a crime. Carrol v. United States, 267 U.S. 132 (1925). Probable cause arises when the officers have knowledge of trustworthy facts sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. United States v. Patterson, 492 F.2d 995, 997 (9th Cir.), cert. denied, 419 U.S. 846 (1974). The showing of probable cause must be equivalent to that which would be required for a search warrant to issue. United States v. Dunn, 946 F.2d 615, 618-619 (9th Cir. 1991). The police may search the entire vehicle and open any packages or luggage found there which could reasonably hold the items for which they have probable cause to search. United States v. Ross, 465 U.S. 798 (1982). It is the government's burden to demonstrate that the automobile exception to the warrant requirement is applicable. United States v. Linn, 880 F. 2d 209, 214 (9th Cir. 1989).

In Ross, the Supreme Court held that individual significant interests do yield to the authority of the search with regard to a vehicle's compartments and even upholstery however, they do not go so far as to hold that a warrantless search may extend to the more significant interest of the operational integrity of a person's vehicle. Ross, 465 U.S. at 823. Surely the Supreme Court would not provide police officers, without first retaining a warrant from a detached and neutral magistrate,

with the ability to allow for the unreasonable dismantling of a vehicle in this fashion. Allowing this type of search puts the freedom of the American public not in the hands of an objective magistrate but instead in the hands of a police officer who has a vested interest in securing arrests. Even more troubling, a reading allowing for such police action would render moot the very purpose of the exclusionary rule which is the basis for this motion.

**B. There Was No Consent to Search the Defendant's Vehicle**

Arrests or searches at immigration checkpoints must be justified by either probable cause or consent. US v. Martinez-Fuerte, 428 U.S. 543, 567 (1976). The government must show that consent was freely given. Schneckloth v. Bustamonte, 412 U.S. 218, 248 (9 Cir. 1988). Voluntariness is based on the totality of the circumstances based on five factors: "...1) whether the defendant was in custody; 2) whether the arresting officer had drawn a gun; 3) whether the Miranda warnings had been given; 4) whether the defendant was told he had a right not to consent; and 5) whether the defendant was told a search warrant could be obtained. United States v. Castillo, 866 F.2d 1071 (9th Cir. 1988).

A stop at a permanent immigration checkpoint constitutes a seizure within the meaning of the Fourth Amendment. Martinez-Fuerte, 428 U.S. at 556. In the present case, the defendant was stopped at a secondary immigration checkpoint where a reasonable person would not feel free to leave. Further, there is no indication in the complaint that the defendant was either given the Miranda warnings or told she had the right to refuse consent. Finally, considering the fact that the defendant had been both to a primary and secondary checkpoint, had dealt with more than one officer directly and that there were a multitude of other officers in the vicinity, the facts and circumstances here point to a conclusion that the defendant's "consent" was more coerced or compelled than it was voluntary. Because the consent was not voluntary, no such consent existed.

**C. Even if There Was Consent, the Search Exceeded the Scope of Consent.**

"A consensual search may not legally exceed the scope of the consent supporting it." People v. Crenshaw, 9 Cal. App. 4th 1403 (1992). "The standard for measuring the scope of a suspect's consent…is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). We are specially afforded a look at the objective reasonableness standard set forth above when we consider the first search of Ms. Tijerina's vehicle. Here, the officer checked the trunk, a generally accepted storage compartment within the vehicle. At the second search however, the police officer proceeded to dismantle a part of her automobile. There was no attempt to search the glove box, the passenger compartment or even behind the gas tank cover. Instead this search immediately exceeded what one might reasonably consider the scope of a routine search, the compartments within a vehicle, and moved into the realm of the absurd, disassembling the mechanical workings of the car.

**D. The Officers Detained the Defendant Beyond a Limited Detention Period.**

A stop at a permanent immigration checkpoint is a seizure within the meaning of the Fourth Amendment. United States v. Preciado-Robles, 964 F.2d 882 (1992). This type of "…stop is constitutional as long as the scope of the detention is limited to brief questions about immigration documents, and a visual inspection of the vehicle…." Id at 884. A brief detention following a valid immigration stop is permitted if the government can prove an articulable suspicion. Id. The court in Preciado added a cautionary note saying, "…there *must* be a valid basis for any additional intrusion, and it must be of a brief duration…." Id at 884. They held that the visible nervousness of the defendant allowed for brief

further questioning including asking consent to search the vehicle. After receiving consent, a search of one of the car's compartments yielded an illicit substance. Id.

The Preciado case differs substantially from the case at bar in that although the officers site nervousness they failed to secure proper consent (see above). The officers instead relied on a subsequent alleged positive canine alert and supposed odor of Bondo. However, both the canine alert and the smelling of Bondo came after the defendant had been questioned at the first inspection point and had given a later involuntary consent. Had the officers instead proceeded directly to the visual inspection and dog sniff, their burden of brief duration may have been satisfied.

The second and more disturbing difference between Preciado and the present case is the excessive difference in duration between the two stops. In Preciado, the officer saw nervousness, immediately asked to search and found cocaine within the scope of an interior container search. Preciado-Robles, 964 F.2d 882. In this case, the defendant was stopped, questioned, searched, inspected by dogs and waited over three hours while officers dismantled her vehicle. The court in Preciado stressed the need for a brief detention to limit the ability of the state to infringe on the right of the people. Id. To allow for three hour detentions where the officers could have, but did not, take the simple steps to acquire a warrant would fly in the face of this limitation.

**E. Conclusion**

In the present case, there was no probable cause such that would allow for a warrantless dismantling of Ms. Tijerina's vehicle. If the police officers felt there was probable cause, they should have secured a proper warrant. Moreover, Ms. Tijerina did not give voluntary consent for the officers to search her car when she felt she was already in custody and even if she had, it was hardly reasonable to understand that consent to extend to disassembling her vehicle. Finally, Ms. Tijerina was detained for almost six hours before her arrest, during which time the

police completely disregarded the 4th Amendment to the Constitution of the United States. Ms. Tijerina hereby moves for a complete suppression of any and all evidence obtained for these violations pursuant to the judicially created remedy for such 4th Amendment violations. Mapp v. Ohio, 367 U.S. 643 (1961), Wong Sun v. U.S., 371 U.S. 471 (1963).

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED THAT**:

1. I, CHRISTIAN DE OLIVAS, am a citizen of the United States and am at least eighteen years of age. My business address is 200 N. Bradford Ave., Ste L, Placentia, California 92870.
2. I am not a party to the above-entitled action. I have caused service of the following documents: **Notice of Motion; Motion to Compel Discovery; Leave File for Further Motions; Points and Authorities** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:
   a. Representative, Assistant United States' Attorney
3. I declare under penalty of perjury that the foregoing is true and correct. Executed on **April 21, 2008**.

**DATED**: April 21, 2008 **SIGNED**: s/ *Christian De Olivas*

CHRISTIAN DE OLIVAS

ATTORNEY FOR DEFENDANT
IRMA TIJERINA-DE LEYVA