KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IRMA YOLANDA TIJERINA-DE LEYVA,<br><br>Defendant. | CRIM. CASE NO. 08CR0439-BTM<br><br>DATE: May 14, 2008<br>TIME: 1:30 p.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced motion. This Response is based upon the files and records of this case.

## I

## STATEMENT OF THE CASE

On February 19, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Irma Yolanda Tijerina-De Leyva with possession of cocaine with the intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1). Defendant was arraigned on the Indictment on March 7, 2008, and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

### A. Primary Inspection

On December 13, 2007, at approximately 6:00 p.m., Defendant approached the United States Border Patrol Highway 86 checkpoint as the driver and sole occupant of a Nissan Maxima bearing Baja California plate AHY8481. Border Patrol Agent Jessica Christoffels approached Defendant's vehicle and identified herself as a Border Patrol agent. When Agent Christoffels asked Defendant to state her citizenship, Defendant provided Agent Christoffels with a DSP-150 and I-94 card (border crossing card). Agent Christoffels observed that Defendant appeared extremely nervous when she hand over her immigration documents. When questioned as to her destination, Defendant stated that she was going to the casino located approximately 20 miles from the checkpoint. When questioned regarding the ownership of the vehicle, Defendant stated that she had owned the vehicle for less than one month. At this point, Agent Christoffels then asked Defendant for consent to search the trunk of her vehicle. Defendant gave consent and was then referred to secondary inspection.

### B. Secondary Inspection

At secondary inspection, Border Patrol Agent Timothy Delgado approached Defendant's vehicle and asked for consent to search the entire vehicle and to perform a canine sniff on the vehicle. Defendant agreed and exited the vehicle. Agent Delgado then retrieved his service canine, Rambo-C, who alerted to the front rocker panels of Defendant's vehicle.

Agent Delgado then inspected the front rocker panels and observed a strong odor of bondo. Agent Delgado asked Defendant if she owned the vehicle. Defendant claimed that she was the owner and that she had purchased the vehicle brand new from the Nissan dealership in Mexicali last month.

Agent Delgado then asked Defendant if she had any aftermarket work completed on the vehicle. Defendant responded in the negative.

Agent Delgado then conducted further inspection of the rocker panels. When Agent Delgado began to tap on the panels, the bondo began to chip off, resulting in the exposure of the access plates to a compartment.

A total of 15 packages, weighing approximately 38.7 pounds, were extracted from the compartment. Agents discovered a white powdery substance in the packages. The substance field tested positive for cocaine.

**C. Defendant's Post-Arrest Statements**

At approximately 10:45 p.m., Defendant was advised of her Miranda rights, which she acknowledged and waived. Defendant stated that she was the owner of the vehicle and that she had owned two of the three cell phones in her possession. She stated that the third phone belonged to her friend, Nuvia. Defendant denied knowledge of the cocaine found in her vehicle. Defendant stated that she purchased the vehicle new in Mexicali approximately one month ago. Defendant then invoked her right to remain silent.

## III

## ARGUMENT

**A. Defendant's Motion to Suppress Should Be Denied Because Defendant Consented to the Search of her Vehicle**

Defendant does not dispute that she informed both the primary and secondary agent that they could search her vehicle. Rather, Defendant claims that the consent she had given to the agents was not voluntary because (1) she was stopped at a secondary immigration checkpoint; (2) she was not informed of her Miranda rights at the time she gave consent; (3) she was not told she had the right to refuse consent; and (4) more than one officer had come into contact with Defendant. (Def.'s Mot. at 7.) However, Defendant's arguments do not render her consent involuntary.

Consent need not be knowing or intelligent, but must be voluntary, that is, it must not be the product of coercive police behavior that overbears the will of the individual. See United States v. Watson, 423 U.S. 411, 424 (1976). As the Court recognized in Schneckloth v. Bustamonte, 412 U.S.

218 (1973), the question "whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Under this totality of circumstances approach, courts generally find a lack of consent only where there has been a finding that explicit or implicit coercion was brought to bear on the consenting party. See Schneckloth v. Bustamonte, 412 U.S. at 228.

The totality of circumstances in this case weigh in favor of concluding that Defendant voluntarily consented to the search of her vehicle. First, Defendant consented to search the trunk of her vehicle while talking to the agent at primary inspection. When Defendant was referred to secondary inspection, she again consented to search of her vehicle. This time, Defendant consented to the search of her entire vehicle and to allow the canine dog to sniff her vehicle. Defendant was not in custody during the two times she consented to the search of her vehicle. In fact, Defendant was sitting in the driver's seat of her own car when she gave consent to her vehicle.

Second, because Defendant was not in custody at the time she gave consent, the agents were not required to advise Defendant of her Miranda rights prior to asking her whether she would consent to the search of her vehicle. When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. Id. at 477-78. Here, there was no custody or interrogation which would require the agents to advise Defendant of her Miranda rights.

Third, there is nothing to suggest that Agent Christoffels or Agent Delgado, or any other agent, used any force to coerce Defendant to consent to the search. Defendant merely claims that her consent must be deemed involuntary because more than one agent came into contact with her at the checkpoint and there were many officers in the vicinity. However, the Ninth Circuit, in approving a consent search at the San Clemente, California checkpoint, has squarely held that "valid consent may be given while detained." United States v. Ramirez-Jiminez, 967 F.2d 1321, 1324 (9th Cir. 1992).

Defendant was asked twice whether she would consent to the search of her vehicle. Both times she consented. The agents did not apply any pressure or force to coerce Defendant to consent. Her consent was made voluntarily and thus, the motion to suppress should be denied.

B. The Inspections in Primary and Secondary Areas Were Valid

Even assuming *arguendo* that Defendant's consent was invalid, Defendant was nontheless lawfully stopped and questioned at the Highway 86 Border Patrol Checkpoint. Border Patrol agents may stop vehicles at permanent immigration checkpoints for brief questioning of drivers and passengers without individualized suspicion. In United States v. Martinez-Fuerte, 428 U.S. 543, 562 (1976). Checkpoint stops are per se reasonable so long as the stop is limited to a few brief questions, presentation of documents, and a "visual inspection of the vehicle . . . limited to what can be seen without a search." See United States v. Taylor, 934 F.2d 218, 220 (9th Cir. 1991)(quoting Martinez-Fuerte, 428 U.S. at 558).

In Taylor, the Ninth Circuit held that where inspection at a Border Patrol checkpoint established the motorist's identity and lawful status, *absent probable cause or consent*, some minimal, articulable suspicion is necessary to justify a brief, further delay for a dog sniff. Taylor, 934 F.2d at 221. Of note, unlike Defendant, the defendant in Taylor *did not* consent to the dog sniff at issue. See id. at 220 ("Although Taylor had consented to the visual inspection of the interior of the luggage compartment, *the record does not indicate any consent for the continued detention*. . . . Thus, *neither consent* nor probable cause justified the continued detention.") (emphasis added). Nonetheless, a unanimous panel found that the Border Patrol agent's observation that the motorist "became increasingly nervous and uneasy at the end of the initial check for aliens constituted minimal, articulable suspicion and therefore justified the brief further delay." Id.; see also United States v. Preciado-Robles, 964 F.2d 882, 884 (9th Cir. 1992) (brief detention following valid immigration questioning was permissible where defendants were "visibly nervous" during questioning).

Here, the Agent Christoffels observations during the brief initial inspection provided the minimal suspicion required to detain the driver further to investigate those suspicions. At primary inspection, Agent Christoffels observed that Defendant was extremely nervous as she handed over her immigration documents.

Defendant's conduct was clearly sufficient to meet the extremely low bar of demonstrating "minimal, articulable suspicion" justifying the brief further detention of Defendant at secondary inspection. After recognizing that Defendant appeared nervous (and after obtaining consent to search

the trunk of her vehicle), Agent Christoffels then referred Defendant to secondary inspection. Agent Delgado and his canine inspected Defendant's vehicle within minutes after Defendant arrived at secondary inspection. Defendant had only been detained for a couple of minutes before the canine alerted to Defendant's car and Agent Delgado observed the bondo on the rocker panels. As the court in Taylor observed:

> In this case . . . the intrusion on individual interests was minimal. See Martinez-Fuerte, 428 U.S. at 557-58 (a routine checkpoint stop "intrude[s] to a limited extent on motorists' right to 'free passage without interruption' and arguably on their right to personal security") (citation omitted). The delay was brief – only a minute. It added an insignificant period of time to an otherwise indisputably lawful detention. Any personal intrusion attributed to the dog sniff was similarly minimal. See United States v. Place, 462 U.S. 696, 707 . . . (1983) (holding that a canine sniff of luggage seized by narcotics detectives at an airport is not a "search" within the meaning of the fourth amendment, principally because the personal intrusion posed by such an action is minimal). Such a "limited intrusion immediately detected the presence of contraband and would have revealed nothing about the container's contents had these been non-contraband."

Therefore, even assuming *arguendo* that Defendant's consent was invalid, the Border Patrol agents had a minimal, articulable suspicion justifying the brief further detention of Defendant at secondary inspection. Defendant's argument to the contrary has no merit.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests that Defendant's Motions be denied where opposed.

DATED: May 7, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/ Luella M. Caldito

LUELLA M. CALDITO
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>IRMA YOLANDA TIJERINA-DE LEYVA,<br>Defendants. | Case No. 08CR0439-BTM<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO SUPPRESS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Christian De Olivas

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 7, 2008

/s/ Luella M. Caldito
LUELLA M. CALDITO